Daniel Risis, *Pro Se*
19 Fordham Rd
Livingston, NJ 07039
307-388-9165
daniel@mikrobank.com

| | |
|---|---|
| DANIEL M. RISIS<br><br>PLAINTIFFS,<br><br>V.<br><br>MARGARITA RISIS, MARK RISIS,<br>PB FINANCING, Et al…<br><br>DEFENDANTS | DISTRICT COURT OF NEW JERSEY<br>ESSEX COUNTY<br>DOCKET NO: 23-cv-03429-ES-JRA<br><br>**CERTIFICATION OF DANIEL RISIS<br>IN SUPPORT OF MOTION TO<br>VACATE JUDGMENT AGAINST<br>DANIEL RISIS** |

I, Daniel M. Risis, certify that the foregoing is a true statement;

1. My name is Daniel M. Risis and I am the Plaintiff in the above-mentioned matter.

2. The judgment against me personally by PB Financing should be vacated immediately due to both the new information that has come to light, and old information that was blatantly ignored by counsel and the courts.

3. I have never been an owner or shareholder of Daniel Markus Inc. dba Perfect Pawn.

4. The owner of Daniel Markus Inc dba Perfect Pawn is Margarita Risis.

5. I have provided proof of this via **Exhibits A - D**

6. Margarita Risis' last known address is 115 N. Livingston Ave, Livingston NJ 07039, she sold her home for a minimum net profit of at least $300,000 in cash and has taken flight with all the profit from this asset.

7. It is not known at this time where her current residence is located.

8. Margarita Risis signed for the loan from PB Financing on behalf of HER company Daniel Markus Inc. dba Perfect Pawn.

9. I, Daniel Risis, only signed the loan as an agent of the company Daniel Markus Inc. dba Perfect Pawn, under the guise that I would not only still be employed by them but that one day I would be the owner of the company, as promised by my mother, Margarita Risis.

10. I was fired from the company in November 2021 when Margarita Risis stole appx 6 million dollars from her own business and absconded.

11. Margarita Risis and Daniel Markus Inc dba Perfect Pawn are responsible for the loan from PB Financing, not Daniel Risis.

12. PB Financing has not once attempted to retrieve these funds from Margarita Risis or Daniel Markus Inc dba Perfect Pawn, instead they have filed continuous and vexatious litigation against me and my estate.

13. PB Financing has not proved that they have attempted to collect this debt from Margarita Risis at all. They simply said "we can't find her".

14. Is that good enough for a Judge? "We can't find her" is an acceptable answer for this court to simply move onto me?

15. PB Financing has not once attempted to find, collect or move forward in a case against Margarita Risis and/or Daniel Markus Inc dba Perfect Pawn

instead they have vowed to attack me solely and personally since I have equity in real estate and other assets.

16. Cash Cow Storage is not affiliated with Daniel Markus Inc or Margarita Risis in any way.

17. Cash Cow Storage is in no way related to this case or any of the matters herein. This is an administrative error on the part of someone else that needs to be corrected.

18. I am not represented by counsel and the attorneys for PB Financing, Stark and Stark, Timothy Duggan, are relentless in their quest to destroy me professionally and personally.

19. Timothy Duggan has a personal vendetta against me, Daniel Risis, and his efforts to collect the debt from me, and me alone is unethical and grounds for disciplinary action and sanctions.

20. I am a victim of a carefully orchestrated fraud schedule devised by my mother Margarita Risis in conjunction with my cousin David Bogolomny, and my mothers boyfriend Elhan, who has been to prison for the very same fraud that I am a victim to.

21. I have proof that I provided to the Colorado courts that I not only tried to explain this, and show proof of such that my requests and claims went ignored in favor of siding with attorney's.

22. I have proof that I attempted to vacate this judgment in Colorado but was rebuffed and unable to complete this since I do not live in Colorado or know how the court system in that state works.  **Exhibit E**

23. Had my mother not stolen all the assets from Daniel Markus Inc dba Perfect Pawn and went into hiding I could have adjudicated the matter properly in the Colorado court system and we would not be here today.

24. At the time of the actual trial I was living in New Jersey and the attorneys that represented the matter in Colorado demanded a payment days before trial or they said they wouldn't try the case.

25. The Abrams law firm tried to extort me days before the case went to trial, they ignored my Dr's orders, and they tried the case without anyone in the company present.

26. They tried the case without proper preparation or information and by virtue of lack of discovery and the correct information the case was lost.

27. At the time of the actual trial I provided the attorneys and the court with a letter from my physician stating that I was under Doctors orders to take time away from work since the mental and physical toll of my mothers theft and betrayal of me was too much to bear. This was ignored completely.

28. Mental health is a crisis in America, and the world, and the United States Legal system ignores it.

29. Mental health is a real issue and I asked for not only time but consideration due to my mental health, and it was ignored.

30. As evidenced by the resolution with the PPP loan, I am never, nor was I ever liable for any Daniel Markus Inc dba Perfect Pawn debts which my mother asked me to co-sign as an AGENT on behalf of the company, not me personally.

31. A Federal Court order was ignored by the US Trustee. **Exhibit F.**

32. This case and this motion come down to one very simple fact, that I have never been able to represent myself in a personal capacity even one time in any court in order to defend myself against the various judgments that have been placed against me due to my mothers actions. Had I ever had a chance to ever represent myself personally, I would never have been saddled with

these judgments, since I only took them out in conjunction with my professional capacity.

33. Consumer Fraud; **Holding financial institutions accountable.** *To help build a fairer New Jersey, DCA protects New Jersey residents from consumer fraud and abuses committed by the biggest financial institutions in the world as well as smaller companies offering novel and fringe financial products. Recent accomplishments include a $575 million settlement with Wells Fargo in December 2018, which resulted in nearly $17 million in payments to New Jersey, to resolve allegations the company engaged in a variety of sales, lending, and other improper business practices for more than a decade.* I, Daniel M. Risis did NOT personally take out this loan, I Daniel M. Risis did not USE any of the funds from this loan for my personal use.

34. It is important that the court re-read the line above, I Daniel M. Risis did not take this out as a personal loan, I signed this document in behest of my mother Margarita Risis for HER business, Daniel Markus Inc dba Perfect Pawn.

35. Timothy Duggan, Stack and Stack and PB Financing have maliciously gone against me, Daniel M. Risis and my personal estate and professional entities that have absolutely nothing to do with Margarita Risis and Daniel Markus Inc. dba Perfect Pawn.

36. Timothy Duggan, Stack and Stack and PB Financing, have trolled my personal and professional life to gain a foothold into what they believe they can "take from me" and have not gone about attempting to collect the actual debt from the rightful owner and responsible party for this debt Margarita Risis.

37. Timothy Duggan, Stack and Stack and PB Financing have continued to harass me, my businesses and my family by way of vexatious litigation by joining litigation(s) that do not pertain to this case, this business or this debt.

38. I want the court to be very clear that I am at no time I am not trying to abscond with anyone's legitimate money and claims, if after a proper court trial I am held personally liable for debts that I never received the money for,

nor am I legally liable for, then YES I will take responsibility for that but I cannot continue to go down this road and have not had my day in court.

39. By virtue of the fact that Daniel did not get the money nor is he a owner of the company he is ipsofacto not responsible for the money that was taken.

I certify that the following statements by me are true and correct to the best of my knowledge.

_____

Daniel M. Risis

Dated: 8/16/23

# EXHIBIT A



STATE OF NEW JERSEY
DEPARTMENT OF THE TREASURY
DIVISION OF TAXATION
**September 4, 2020**

MARGARITA RISIS                                   Re: DANIEL MARKUS, INC.
2 ASPEN PLACE                                     043-675-308/000
PASSAIC, NJ 07055                                 018

**NOTICE OF FINDING OF RESPONSIBLE PERSON STATUS**

Dear Taxpayer,

Based on information in our files, the Division of Taxation has determined that you're a "responsible person" of the above named business. A responsible person is someone who is under a duty to act for the business with respect to the payment of the taxes. As a responsible person you're responsible for paying any part of the trust fund taxes shown on the enclosed Summary of Taxes Due which the above named business failed to pay. Trust fund taxes are taxes that a business is required to collect and pay over to the Division, such as sales tax and income tax withholdings.

**If you disagree** with this determination, you may either: 1) submit a written protest and request for an informal hearing with the Conference and Appeals Branch (CAB) within 90 days of the date of this notice, or 2) file an appeal ( with the required fee) with the Tax Court of New Jersey. If you submit a protest and you disagree with CAB's final determination, you may file an appeal with the Tax Court within 90 days from the date of the final determination.

If you don't file a protest or a Tax Court complaint within the prescribed time periods and the trust fund tax liabilities for the business remain unpaid, we will begin collection actions, including the filing of a judgement against you. Interest will continue to accrue on the outstanding liabilities even if you file a protest or complaint.

Please keep in mind that a protest of this Notice of Finding of Reponsible Person Status is not a protest of an assessment against the business. The only way to protest the amounts shown on the Summary of Taxes Due is for the business to submit a protest or file a Tax Court complaint within 90 days from the date of the audit determination.

Please contact the person named below if you have any questions concerning this matter. If you wish to protest this determination or file a complaint with the Tax Court, be sure to follow the instructions on the enclosed pages.

IN REPLY REFER TO
**SHEREE PHILLIP**
NJ Division of Taxation
153 HALSEY STREET, Box
47022
NEWARK, N.J. 07101
Phone: (973) 648-3900   Fax:
(973) 648-3929

http://www.state.nj.us/treasury/taxation
New Jersey Is An Equal Opportunity Employer

# EXHIBIT B

 Gmail

Jaime Resnick <jaime@mikrobank.com>

## Unlawful use of name "Perfect Pawn"

1 message

**Peter Caplan** <se95@aol.com>
Thu, Dec 16, 2021 at 9:46 AM
Reply-To: Peter Caplan <se95@aol.com>
To: jaime@danielmarkus.com, daniel@danielmarkus.com, daniel@mikrobank.com, jaime@mikrobank.com
Cc: se95@aol.com

TO WHOM IT MAY CONCERN:

I represent Margarita Risis, owner and President of Daniel Markus, Inc.
It has come to our attention that the name "Perfect Pawn" is being used unlawfully and without permission to transact business in or about 221 Washington Street, Newark, New Jersey and also at 1275 Route 23, Wayne, New Jersey.

My client demands that any individuals or entities engaging in such unlawful activity immediately cease and desist. This conduct is unauthorized and unlawful and Ms. Risis demands that you stop immediately.

Thank you.

## PETER G. CAPLAN
ATTORNEY AT LAW
130 POMPTON AVENUE
VERONA, NEW JERSEY 07044
TEL 973.571.1868
CELL 973.477.8984
FAX 973.571.1869

Visit my website at:

CAPLANATLAW.COM

# EXHIBIT C



## *State of New Jersey*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
**25 MARKET STREET**
PO BOX 117
TRENTON NJ 08625

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

ANDREW J. BRUCK
*Acting Attorney General*

MICHELLE L. MILLER
*Director*

December 2, 2021

**VIA REGULAR MAIL AND CERTIFIED MAIL RRR**

Daniel Markus Inc. d/b/a Perfect Pawn
869 Kearny Avenue
Kearny, New Jersey 07302

Margarita Risis
115 North Livingston Ave.
Livingston, New Jersey 07039

**VIA EMAIL**

Margarita Risis
Daniel Risis

Re:  Cease and Desist Order, Order NO. OCF21-18

Dear Sir or Madam:

Please be advised that this office represents the New Jersey
Department of Banking and Insurance ("Department") in the above-
captioned matter.  Enclosed with this letter is Cease and Desist
Order No. OCF21-18 issued by the Commissioner of the Department on
December 1, 2021 ("Order").

As stated in the Order, Daniel Markus Inc. d/b/a Perfect Pawn
("Respondent") is alleged to have violated N.J.S.A. 45:22-2, which
states that no person shall engage or continue in business as a
pawnbroker except as authorized by this article, and without first
obtaining a license from the Commissioner of the Department.

The Order requires Respondent to immediately cease and desist
from immediately from using the word "pawn" or "pawnbroker" in any

1

of its advertisements or communications to the public, including any signs outside of its business premises, its telephone, email, wireless and mobile systems, and any of its websites, including _____, as well as any social media.

Respondent has the right to move to vacate this Order.  As described more fully in the Order, the request to vacate must include a specific statement responding to each allegation and identifying any defense intended to be asserted in response to each allegation.  As per the instructions in the attached Order, the request to vacate must be received by the Department within twenty (20) days of service of this Order upon you.  An extra copy of any response to the Order should also be sent to my attention.

Please be guided accordingly.

Sincerely,

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:   s/ *Garen Gazaryan*

GAREN GAZARYAN
DEPUTY ATTORNEY GENERAL

2

ORDER NO. OCF21-18

## STATE OF NEW JERSEY
## DEPARTMENT OF BANKING AND INSURANCE

IN THE MATTER OF:

Daniel Markus, Inc. d/b/a Perfect Pawn, d/b/a )　　ORDER TO CEASE AND DESIST
Cash Cow, Reference Nos. 1702746, 1702974, )
1501778, 1501779, 1401171, 1200822, )
1000161, 1401170, and 1501780. )

TO:　Daniel Markus Inc.
　　　869 Kearny Avenue
　　　Kearny, New Jersey 07302

THIS MATTER having been opened by the Commissioner of the New Jersey
Department of Banking and Insurance ("Commissioner"), upon information that Daniel Markus,
Inc. d/b/a Perfect Pawn d/b/a Cash Cow ("Respondent"), may have violated various provisions
of the Pawnbroking Law, N.J.S.A. 45:22-1 to -34 ("Act"); and

WHEREAS, Respondent is subject to the provisions of the Act; and

WHEREAS, pursuant to N.J.S.A. 45:22-2, no person shall engage or continue in business
as a pawnbroker except as authorized by this article, and without first obtaining a license from
the Commissioner; and

WHEREAS, pursuant to N.J.S.A. 45:22-2, no person other than a licensee shall display
any sign or other device in or about the premises of business, or in any advertising matter or
other printed matter which in anywise resembles the emblem or sign commonly used by
pawnbrokers, nor shall there be any sign displayed which is calculated to deceive, nor shall the
word "pawnbroker" be used in or about the premises of business or in any advertising matter or
other printed matter nor shall any such person hold himself out to the public to be a pawnbroker,
either through advertising, soliciting, signs or otherwise;

WHEREAS, pursuant to N.J.S.A. 17:1-15(j), the Commissioner shall have the power, in addition to any powers prescribed by law, to order any person violating any provision of Title 17 of the Revised Statutes or Title 17B of the New Jersey Statutes to cease and desist from engaging in such conduct; and

WHEREAS, pursuant to N.J.A.C. 3:23-4.1, all licensees of the Department of Banking and Insurance ("Department") are required to file an annual report for the preceding year on or before close of business on May 1 of each year; and

WHEREAS, due to the public health emergency, the Department adopted a temporary rule modification to N.J.A.C. 3:23-4.1 which extended the annual report filing deadline to June 1, 2020, for that year only; and

WHEREAS, due to the public health emergency, the Department further provided a grace period for filing of annual reports until August 1, 2020, for that year only, as reflected on the Department's website at https://www.state.nj.us/dobi/covid_faqsoc/annualreport.html; and

WHEREAS, Respondent was licensed by the Department as a pawnbroker from 2012 to February 2, 2021 when its nine licenses were revoked; and

WHEREAS, before February 2, 2021, Respondent had nine pawnbroking licenses to provide pawnbroking services out of these locations: (1) 735 Maine Avenue, Passaic, New Jersey 07032, License Reference No. 1702746; (2) 1004 Market Street Paterson, New Jersey 07513, License Reference No. 1702974; (3) 1217 East Grand Street Elizabeth, New Jersey 07201, License Reference No. 1501778; (4) 122 Speedwell Avenue Morristown, New Jersey 07960, License Reference No. 1501779; (5) 342 Bloomfield Avenue Montclair, New Jersey 07042, License Reference No. 1401171; (6) 221 Washington Street Newark, New Jersey 07102, License Reference No. 1200822; (7) 869 Kearny Avenue Kearny, New Jersey 07032, License Reference No. 1000161; (8) 1275 Route 23 Wayne, New Jersey 07470, License Reference No.

1401170; and (9) 300 Route 17 North Paramus, New Jersey 07652, License Reference No. 1501780; and

WHEREAS, Respondent was required to file its annual report for the year ending in December 31, 2019 ("2019 annual report") by August 1, 2020; and

WHEREAS, Respondent failed to file the 2019 annual report by August 1, 2020; and

WHEREAS, on September 23, 2020, the Department issued an Order and Notice of Violation, AR20-1000161 ("Notice of Violation") to Respondent for its failure to file the 2019 annual report by the August 1, 2020 deadline; and

WHEREAS, on September 29, 2020, the Department mailed the Notice of Violation to Respondent by certified mail, return receipt requested; and

WHEREAS, on October 3, 2020, the certified mail was delivered to Respondent; and

WHEREAS, the Notice of Violation advised Respondent that its 2019 annual report had not been filed by the August 1, 2020 deadline; and

WHEREAS, the Notice of Violation also advised Respondent that in the event the 2019 annual report or request for a hearing were not filed by February 1, 2021, then Respondent's pawnbroking licenses would be revoked effective February 2, 2021, and a civil monetary penalty of $15,000.00 would be assessed against Respondent; and

WHEREAS, Respondent failed to file the 2019 annual report by February 1, 2021; and

WHEREAS, as a result of its failure to file the 2019 annual report, Respondent's nine pawnbroking licenses were revoked on February 2, 2021; and

WHEREAS, on March 19, 2021, the Department sent a letter to Respondent advising of the revoked licenses ("revocation letter") and requiring that Respondent return its licenses to the Department and pay a $15,000.00 penalty; and

WHEREAS, on April 5, 2021, Respondent filed the 2019 annual report; and

3

WHEREAS, to date, Respondent has not paid the $15,000.00 penalty; and

WHEREAS, despite being unlicensed since February 2, 2021, Respondent continues to use the word "pawn" in its name; and

WHEREAS, additionally, despite being unlicensed since February 2, 2021, Respondent continues to advertise itself to the public as a pawnbroker; and

WHEREAS, additionally, despite being unlicensed since February 2, 2021, Respondent maintains the following website – https: pawnpawn.com – on which Respondent advertises itself as a pawn outlet; and

WHEREAS by using the word "pawn" in its name and by advertising itself to the public as a pawnbroker, Respondent violated N.J.S.A. 45:22-2; and

NOW, THEREFORE, IT IS on this 1___ day of _December_ 2021,

ORDERED that, pursuant to N.J.S.A. 45:22-2 and N.J.S.A. 17:1-15(j), Respondent shall immediately cease and desist from any and all services requiring a pawnbroker license; and

IT IS FURTHER ORDERED that, pursuant to N.J.S.A. 45:22-2 and N.J.S.A. 17:1-15(j), Respondent shall immediately cease and desist from using the word "pawn" or "pawnbroker" in its name; and

IT IS FURTHER ORDERED that, pursuant to N.J.S.A. 45:22-2 and N.J.S.A. 17:1-15(j), Respondent shall immediately cease and desist from using the word "pawn" or "pawnbroker" in any of its advertisements or communications to the public, including any signs outside of its business premises, its telephone, email, wireless and mobile systems, and any of its websites, including https. pawnpawn.com , as well as any social media; and

IT IS FURTHER ORDERED that, a failure to comply with this Order may subject Respondent to further proceedings or legal action; and

4

IT IS FURTHER ORDERED that Respondent has the right to move to vacate this Order to Cease and Desist. Any motion to vacate this Order to Cease and Desist must be in writing and filed with the Commissioner within twenty (20) days of service of this Order to Cease and Desist by delivery to Paulette Sibblies-Flagg, OCF Investigations Unit, Department of Banking and Insurance, P.O. Box 040, Trenton, New Jersey 08625 or by electronic mail to paulette.sibblies-flagg@dobi.nj.gov. A copy of the motion shall also be sent to Deputy Attorney General Garen Gazaryan at P.O. Box 117, Trenton, New Jersey 08625 or by electronic mail to garen.gazaryan@law.njoag.gov.

*M. Caride*

Marlene Caride
Commissioner

# EXHIBIT D

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Small Business Administration (collectively, the "United States"), Daniel Markus, Inc. ("DMI"), Margarita Risis ("Risis"), and Bryan Quesenberry ("Quesenberry" or "Relator") (collectively referred to as "the Parties") through their authorized representatives.

## RECITALS

A.       DMI is a corporation organized under the laws of New Jersey and located at 869 Kearny Avenue, Kearny, NJ 07032. DMI operated multiple pawn shops in New Jersey. Risis is DMI's sole shareholder.

B.       On September 12, 2020, Bryan Quesenberry, proceeding *pro se*, filed a *qui tam* action in the United States District Court for the District of New Jersey captioned *United States ex rel. Quesenberry v. Artistic Tile, Inc.*, Case No. 20-cv-13070, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleges that DMI unlawfully applied for and received two loans under the Paycheck Protection Program ("PPP") prior to December 31, 2020 and falsely certified, in the submitted applications for the PPP loans, that it would receive only one PPP loan prior to December 31, 2020.

C.       The PPP was established pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The CARES Act, which was enacted in March 2020, was designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for employee payroll and certain other expenses, through the PPP. To obtain a PPP loan, a qualifying business was required submit a

1

PPP loan application, which is signed by an authorized representative of the business. The loan application requires the business—through its authorized representative—to acknowledge the program rules and make certain affirmative certifications regarding its eligibility to obtain the PPP loan. A PPP loan application must be processed by a participating lender, which receives a processing fee from SBA. If a loan application is approved, the participating lender funds the loan, which is 100% guaranteed by the SBA.

      D.     The United States contends that it has certain civil claims against DMI and Risis

for engaging in the following conduct, hereinafter referred to as the "Covered Conduct":

> The United States contends that, in April 2020, DMI, by and through Risis, submitted an application for a PPP loan to "Lender 1," a bank headquartered in Salt Lake City, Utah. In that application, DMI, by and through Risis, falsely stated that "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the [PPP]" (hereinafter, the "False Statement"). Subsequently, DMI, by and through Risis, entered into a promissory note by which Lender 1 agreed to lend $242,849 to DMI pursuant to the PPP (the "Lender 1 PPP Loan"), and DMI received the Lender 1 PPP Loan proceeds by electronic transfer.

> The United States further contends that, in April 2020, DMI, by and through Risis, submitted an application for a PPP loan to "Lender 2," a bank headquartered in McLean, Virginia. In that application, DMI, by and through Risis, falsely stated that "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the [PPP]." Subsequently, DMI, by and through Risis, entered into a promissory note by which Lender 2 agreed to lend $268,300 to DMI pursuant to the PPP (the "Lender 2 PPP Loan"), and DMI received the Lender 2 PPP Loan funds by electronic transfer.

> The United States contends that, after receiving both the Lender 1 PPP Loan funds and the Lender 2 PPP Loan funds, DMI knowingly and improperly retained the funds obtained from both loans, contrary to the express certifications that DMI made, by and through Risis, that DMI would not receive more than one PPP loan prior to December 31, 2020.

      E.     The United States contends that it has certain civil claims against DMI and Risis

for violation the False Claims Act, 31 U.S.C. § 3729-3733 ("FCA"), and under the Financial

2

Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1833a ("FIRREA"), predicated on violations of 18 U.S.C. § 1014, 15 U.S.C. § 645(a), 18 U.S.C. § 1001, 18 U.S.C. § 1343, and 18 U.S.C. § 1344.

F.     Relator claims entitlement to a share of the proceeds of this Settlement Agreement under 31 U.S.C. § 3730(d).

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.     DMI and Risis, jointly and severally, shall pay to the United States $50,000 ("Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the District of New Jersey no later than 14 days after the date of this Agreement.

2.     DMI agrees to refrain from requesting loan forgiveness from SBA for the Lender 1 PPP Loan and shall extinguish the SBA guarantee on the loan by repaying the Lender 1 Bank PPP Loan in keeping with the terms of its promissory note, except that DMI shall fully repay the loan no later than 12 months after the date of this Agreement.

3.     In the event that DMI or Risis fail to complete the payments set forth in Paragraphs 1 or 2 by the dates upon which they are due, DMI and Risis shall be in Default of their payment obligations ("Default"). Upon Default, the United States will provide DMI and Risis, through their legal counsel or other representative previously designated by DMI and Risis, by electronic mail a written Notice of Default, and DMI and Risis shall have an opportunity to cure such Default within three business days from the date the Notice of Default is

3

sent by counsel for the United States. If DMI and Risis fail to cure the Default within three business days from the date the Notice of Default is sent by the United States, the difference between the amount paid by DMI and Risis under Paragraph 1 and $50,000 shall become immediately due and payable, and interest on such amount shall accrue at the rate of 10 percent per annum, compounded daily from the date of Default. In addition, the amount of any SBA guarantee paid in connection with the Lender 1 PPP Loan shall be trebled and become immediately due and payable to the United States, and interest on such amount shall accrue at the rate of 10 percent per annum, compounded daily from the date the guarantee is paid by SBA.

4.    Upon execution of this Settlement Agreement, DMI and Risis shall enter into a Consent Judgment with the United States in the form attached as Attachment A. The United States shall not file the Consent Judgment unless DMI and Risis are in uncured Default as defined above. DMI and Risis agree not to contest any offset imposed and not to contest any Consent Judgment and/or collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States. At its sole option, in the event of uncured Default as defined above, the United States alternatively may rescind this Agreement as to DMI or Risis and bring any civil and/or administrative claim, action, or proceeding against DMI or Risis for the claims that would otherwise be covered by the releases provided herein. If the United States opts to rescind this Agreement in the event of uncured Default as defined above, DMI or Risis agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (a) filed by the United States against DMI or Risis within 180 days of written notification to DMI and Risis that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these

4

defenses were available on the particular date when the Civil Action referenced in Recital Paragraph D was filed.

5.      Conditioned upon the United States receiving the payment set forth in Paragraph 1, the United States shall pay to Relator \$3,541.05 by electronic funds transfer ("Relator's Share"). No other relator share payments shall be made under this Agreement.

6.      Subject to the exceptions in Paragraph 8 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases DMI and Risis from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; FIRREA, 12 U.S.C. § 1833a; or the common law theories of payment by mistake, unjust enrichment, and fraud.

7.      Subject to the exceptions in Paragraph 8 below, and upon the United States' receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases DMI and Risis from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

8.      Notwithstanding the releases given in Paragraph 6 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

        a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

        b.      Any criminal liability;

5

     c.    Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including the suspension and debarment rights of any federal agency;

     d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

     e.    Any liability based upon obligations created by this Agreement; and

     f.    Any liability of individuals, except Margarita Risis.

9.    Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

10.    Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Risis and DMI, and its DMI's officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

11.    DMI and Risis waive and shall not assert any defenses DMI or Risis may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment

6

of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

12.     DMI and Risis fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that DMI or Risis have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

13.     DMI and Risis fully and finally release the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that DMI or Risis have asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

14.     a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of DMI or Risis, and DMI's present or former officers, directors, employees, shareholders, and agents in connection with:

> (1)     the matters covered by this Agreement;
>
> (2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;
>
> (3)     DMI's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

7

    (4)  the negotiation and performance of this Agreement; and

    (5)  the payment DMI makes to the United States pursuant to this

      Agreement and any payments that DMI may make to Relator,

      including costs and attorney's fees,

are unallowable costs for government contracting purposes (hereinafter referred to as
"Unallowable Costs").

    b.  Future Treatment of Unallowable Costs: Unallowable Costs will be
separately determined and accounted for by DMI and Risis, and DMI and Risis shall not charge
such Unallowable Costs directly or indirectly to any contract with the United States.

    c.  Treatment of Unallowable Costs Previously Submitted for Payment:
Within 90 days of the Effective Date of this Agreement, DMI and Risis shall identify and repay
by adjustment to future claims for payment or otherwise any Unallowable Costs included in
payments previously sought by DMI and Risis or any of its subsidiaries or affiliates from the
United States. DMI and Risis agree that the United States, at a minimum, shall be entitled to
recoup from DMI and Risis any overpayment plus applicable interest and penalties as a result of
the inclusion of such Unallowable Costs on previously submitted requests for payment. The
United States, including the Department of Justice and/or the affected agencies, reserves its
rights to audit, examine, or re-examine DMI's and Risis's books and records and to disagree with
any calculations submitted by DMI and Risis or any of its subsidiaries or affiliates regarding any
Unallowable Costs included in payments previously sought by DMI and Risis, or the effect of
any such Unallowable Costs on the amount of such payments.

  15.  This Agreement is intended to be for the benefit of the Parties only.

8

16.     Upon receipt of the payment described in Paragraph 1, above, Relator and the United States shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of all claims against DMI in the Civil Action pursuant to Rule 41(a)(1)(A). Such dismissal shall be: (a) with prejudice to the Relator as to all claims against all named defendants in the Civil Action; (b) with prejudice to the United States as to the Covered Conduct; and (c) without prejudice to the United States as to all other claims or allegations in the Civil Action.

17.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

19.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of New Jersey. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23.     This Agreement is binding on DMI's and Risis' successors, transferees, heirs, and assigns.

9

24.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

25.     All parties consent to the United States' disclosure of this Agreement, and

information about this Agreement, to the public.

26.     This Agreement is effective on the date of signature of the last signatory to the

Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute

acceptable, binding signatures for purposes of this Agreement.

[*remainder of page intentionally blank*]

10

## THE UNITED STATES OF AMERICA

Dated: the 16 day of March, 2022

By: *Jared S. Wiesner*

Jared Wiesner
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

Dated: the 17 day of March, 2022

By:

David V. Simunovich
Assistant United States Attorney
Counsel for the United States
970 Broad Street, Suite 700
Newark, NJ 07102
Tel: (973) 645-2736
*Attorneys for United States of America*

APPROVED:

R. DAVID WALK, JR.
Chief, Government Fraud Unit
United States Attorney's Office
District of New Jersey

11

## DANIEL MARKUS, INC. & MARGARITA RISIS

Dated: the /5 day of March, 2022

Daniel Markus, Inc.
By: **Margarita Risis**
President

Dated: the /5 day of March, 2022

Margarita Risis

Dated: the /l day of March, 2022

David S. Hong, Esq.
Law Office of David S. Hong
c/o Prestige
350 W. 42nd Street, Suite 19H
New York, NY 10036
*Counsel for Daniel Markus, Inc. and Margarita Risis*

**RELATOR – BRYAN QUESENBERRY**

Dated: the ___ day of March, 2022

By: _____

Bryan Quesenberry
*Pro Se* Relator

13

# EXHIBIT E

May 26, 2022

**Via Email**
County Court, City and County of Denver
State of Colorado
Denver County Court
1437 Bannock Street
Denver, Colorado 80202

RE:    Case Number: 21C64227

Dear Honorable Court,

I, Daniel Risis, represent myself ProSe in the above-mentioned matter. I feel it is necessary to give you some background factual information along with various exhibits ahead of tomorrow's hearing. It would also be appreciated if the court could email me the zoom link as the only one I received is via paper and the link is difficult to click that way.

Please let me begin how this all transpired and why this judgment should be overturned and my name removed from the case.

I am currently a victim of malicious fraud perpetrated by the 100% Owner of Daniel Markus Inc. (DBA Perfect Pawn), Margarita Risis as well as my cousin David Bogomolny. This case stems from a business transaction between Margarita Risis' Company (Daniel Markus Inc.) and Pawn Broker Funding DBA PB Financial. The reason for my letter is to inform you that my name was used in conjunction as a cosigner for a business loan which I did not receive any of the funds for. All the money and subsequent attorney and default fees is a result of the negligence of my mother as well as the original law firm which was hired to represent her Business.

In the late summer/early fall of 2021, as we prepared for trial on this case, Abrhams Law sent me an email (Exhibit A) demanding immediate payment leading up to the trial. I not only was not aware of an active trial, my mothers health at the time prevented her from traveling to Colorado and our company is in New Jersey. During the same week, I had to take a medical

leave for mental exhaustion (Exhibit B letter from my Dr.), due to my mothers negligence and the stress caused by the law firm. Rather than being receptive to my mental state, my mother subsequently robbed all the assets from her pawn shops and fired me. She did this in conjunction with my cousin David Bogomolny. (Exhibits C-E is proof I was not, and never have been, the owner of Daniel Markus and should not be held liable for any claims)

There is currently a criminal investigation underway into this matter, and I have all video, photo and email evidence of this. It is very important that someone in the Colorado Court System recognizes my name is fraudulently used since this loan was done in anticipation of the ability to liquidate assets on behalf of the business but rather then doing this, my mother opted to simply rob her own assets and abscond with the goods while closing 8 Pawn Shops. Although we were the recipient of a PPP Loan, the Covid-19 economic factors, along with lack of legal representation and in conjunction with my mothers actions have led to a million dollar judgment against me personally in a matter where I got no money nor do I have the ability to even defend myself personally since I was wrongfully terminated from the company so I can be the "fall guy" for this business debt.

Respectfully Submitted,

Daniel M. Risis

# EXHIBIT F

Order Filed on May 5, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 23-11800 |
| **DANIEL M. RISIS,** | Chapter: 7 |
| | Judge: John K. Sherwood |
| Debtor. | |

## DECISION AND ORDER RE MOTION BY MR. RISIS
## TO INVESTIGATE CRIMINAL ACTS

The relief set forth on the following page is hereby **ORDERED**.

**DATED: May 5, 2023**

Honorable John K. Sherwood
United States Bankruptcy Court

Debtor: Daniel M. Risis
Case No.: 23-11800
Caption of Order: **DECISION AND ORDER RE MOTION BY MR. RISIS**
**TO INVESTIGATE CRIMINAL ACTS**

## WHEREAS:

A. Daniel M. Risis, the *pro se* debtor in this Chapter 7 case, filed a Motion to investigate criminal acts against him. [ECF No. 148].

B. Attached to the Motion is a letter from Mr. Risis which sets forth "15 crimes" against Mr. Risis and it appears that Mr. Risis wants the Court to order a thorough investigation of these alleged crimes.

C. The Court has advised Mr. Risis that he may report crimes against him to the appropriate State and Federal authorities and it appears that he has done so to some extent. Pursuant to 28 U.S.C. § 586(a)(3)(F), the United States Trustee for this District has the obligation to notify the United States attorney of crimes under the laws of the United States. It is unclear whether this provision relates to *any* crimes or only "bankruptcy crimes." 18 U.S.C. § 3057 requires trustees and bankruptcy judges having reasonable grounds for believing that the laws of the United States have been violated to report all the facts and circumstances of the case to the appropriate United States attorney. The report must include the names of witnesses and the offenses believed to have been committed. Ultimately, it appears that the United States attorney makes the decision to investigate or prosecute. *See* 18 U.S.C. § 3057(b). Also, it does not appear that a bankruptcy court can order a state attorney to investigate violations of state law. *See In re Parr*, 4 B.R. 646, 648 (Bankr. E.D.N.Y. 1980). Though it is not clear whether a bankruptcy court, trustee or the Office of the United States trustee has an obligation to report any pre-petition federal crime to the United States attorney (as opposed to just "bankruptcy crimes"), the motion by Mr. Risis does not contain nearly enough information for any of these parties to make a reasonable decision on whether a criminal violation has occurred. To the extent Mr. Risis wants to launch a criminal investigation through the Court, the Chapter 7 trustee or the Office of the United States Trustee, more information and details need to be provided.

D. The Court has also advised Mr. Risis that many of the crimes described by Mr. Risis can also be addressed by civil claims against the perpetrators. These claims are property of Mr. Risis's bankruptcy estate which, at this time, should be investigated and prosecuted by the Chapter 7 trustee. Mr. Risis has been directed to provide all information regarding potential civil claims against third parties to the Chapter 7 trustee. To the extent these claims are not brought by the Chapter 7 trustee on behalf of the estate, they can be abandoned by the Chapter 7 trustee pursuant to § 554 of the Bankruptcy Code and then Mr. Risis will have the right to pursue them on his own behalf.

Page 2
Debtor:                Daniel M. Risis
Case No.:              23-11800
Caption of Order:      **DECISION AND ORDER RE MOTION BY MR. RISIS
                       TO INVESTIGATE CRIMINAL ACTS**

---

E. The Court notes that Mr. Risis has stated that he has no intention of working with the Chapter 7 trustee or his counsel and that he intends to either seek dismissal of this case or conversion to Chapter 11. The Court notes that a Motion to dismiss this case was filed by Mr. Risis yesterday and it will be considered when it is scheduled for a hearing. At this time, this is a Chapter 7 case, and the Court must address this Motion in that context. Also, the investigation and pursuit of civil claims (and defenses to claims) may result in substantial professional fees which will be charged to Mr. Risis's bankruptcy estate. Thus, Mr. Risis and the Chapter 7 trustee must conduct a cost-benefit analysis with respect to each claim and defense.

F. As to the specific crimes that Mr. Risis has described, the Court will address each below.

   (1) Adam Kessler (Kessler & Kessler) – This appears to be a claim for fraud and legal malpractice, a civil claim which should be investigated by the Chapter 7 trustee.

   (2) Meisel Tutor & Lewis – This is civil claim for tax and accounting fraud which should be investigated by the Chapter 7 trustee.

   (3) Oleg Neivestny – The description of this claim is too vague so the Court cannot comment.

   (4) Margarita Risis – Based on the description by Mr. Risis, this seems to be a substantial civil claim. It is unclear whether this claim belongs to Mr. Risis or Daniel Markus Inc. It also appears that this situation gave rise to the PB Financing judgment against Mr. Risis personally. The details concerning a civil claim against Margarita Risis and the origin of the PB Financing claim should be investigated by the Chapter 7 trustee. Mr. Risis also says that there is an ongoing criminal investigation concerning Margarita Risis.

   (5) Tawfic Helou – No details were provided so the Court cannot comment.

   (6) Bryan Lustig – It appears that Mr. Risis has been sued by Mr. Lustig, his wife and her brother based on a YouTube video. The status of the litigation is not set forth, but the litigation is stayed at this point due to the bankruptcy filing. The plaintiffs in the lawsuit may consider themselves creditors of Mr. Risis and to extent they file claims, they should be evaluated. There is not enough detail to determine whether Mr. Risis has claims against the plaintiffs, but he suggests that false affidavits were filed, and the litigation

Page 4
Debtor:            Daniel M. Risis
Case No.:          23-11800
Caption of Order:  **DECISION AND ORDER RE MOTION BY MR. RISIS**
                   **TO INVESTIGATE CRIMINAL ACTS**

was frivolous. If Mr. Risis thinks he has a claim against the plaintiffs, he should provide more detail.

(7) Matthew Leff – Mr. Leff and Mr. Risis were partners in real estate ventures which led to acrimonious litigation in State Court which has been pending for some time. Mr. Leff considers himself a creditor of Mr. Risis and Mr. Risis asserts claims against Mr. Leff based on, among other things, Mr. Leff's alleged violation of Operating Agreements. The Chapter 7 trustee has a duty to protect Mr. Risis's equity interests in these real estate ventures and investigate whether the estate has any claims against Mr. Leff based on the Operating Agreements. As for litigation strategy versus Mr. Leff, the Court cannot comment. For now, this matter is in the hands of the Chapter 7 trustee.

(8) Irene Manukaian - This appears to be a claim for theft and fraud by an employee who sold inventory and kept the proceeds for herself. This matter can be pursued both as a criminal matter and through civil litigation. More detail is needed to evaluate the merits of the claims.

(9) Fred Diabes – Mr. Risis describes Mr. Diabes as the 90% owner of Mariners Bank who was indicted and then surrendered his banking license. At some point, Mr. Risis tried to refinance his debt and contacted Mr. Diabes for assistance. Mr. Risis states that Mr. Diabes offered to loan up to $10 million. Mr. McManus was introduced by Mr. Diabes for the purposes of a $1 million loan to prevent foreclosure of the Yenta property. Mr. Risis alleges (i) that the mortgage holder (Mr. Solakian) and his attorney refused to cooperate by providing a payoff letter to facilitate the refinancing, (ii) that Yenta's attorney was working against Yenta and in favor of Mr. Solikan and (iii) Mr. Diabes and Mr. McManus were not able to make loans because of their legal troubles and walked away from their refinancing commitments. The Court notes that Yenta filed its own bankruptcy case in Trenton, NJ. In that case, Mr. Solakian was granted stay relief to proceed with the foreclosure of the Yenta property and the Chapter 11 case has been dismissed. The issues raised concerning Mr. Diabes /Mr. McManus (the proposed refinance lenders), Yenta's attorney, and Mr. Solakian could have been raised in the Yenta case. Mr. Risis believes that the failure to raise the issues in the Yenta bankruptcy was the fault of Yenta's counsel. To the extent that Mr. Risis believes that he has civil claims against any of the people described above, he should share the factual and legal basis for the claims with the Chapter 7 trustee. As set

Page 5
Debtor:           Daniel M. Risis
Case No.:         23-11800
Caption of Order: **DECISION AND ORDER RE MOTION BY MR. RISIS
                  TO INVESTIGATE CRIMINAL ACTS**

forth above, if the Chapter 7 trustee decides not to bring the claims, he can
bring them himself.

(10) Mariners Bank – Mr. Risis states that 90% of this Bank was owned by
Mr. Diabes who was allegedly indicted (see above). He also alleges Mariners
Bank "fraudulently forfeited and defaulted" loans to 2 entities owned by
Mr. Risis - Market Street Holdings and Dalex Development. Then, Mariners
Bank sold both loans to third parties at steep discounts to get away from
Mr. Risis who was accusing Mariners Bank of criminal activity. Since
Mr. Risis states that Mr. Diabes has already been indicted, it is not clear
whether he is seeking additional criminal investigations. On the civil side, to
the extent that Mr. Risis believes there is a legal basis to assert a claim
against a bank for selling a loan to a third party he should share his legal
theory with the Chapter 7 trustee. Also, if Mr. Risis is suggesting that
Mariners Bank fraudulently declared default against Market Street Holdings
or Dalex Development, that defense could have been raised in the State Court
foreclosure proceedings.

(11) Jim Solakian – Mr. Solakian is discussed somewhat in the Fred Diabes
section above; he was the mortgage holder in the Yenta matter. Mr. Risis
describes Mr. Solakian as a predatory lender who forced Mr. Risis to hire his
son. Mr. Solakian is also accused of breaching an agreement to provide
financing for Mr. Risis's Dalex project. The Court notes that civil claims
against Mr. Solakian may belong to Dalex and/or Yenta. To the extent that
Mr. Risis believes he has claims against Mr. Solakian he should provide the
legal and factual basis to the Chapter 7 trustee.

(12) Nicholas Biase – This individual is the Chapter 7 trustee's son who had a
relationship with Stack & Stack, the Chapter 7 trustee's real estate broker.
The Court has already considered the relationship between Nicholas Biase
and Stack & Stack and accepts the Chapter 7 trustee's statement that his son
is fully employed elsewhere and is receiving no compensation from Stack &
Stack for this case or any other pending matters. [ECF No. 98, ¶¶ 5-6]. The
Court was concerned that Nicholas Biase is still mentioned on the Stack &
Stack website but did not see this as a reason to disqualify Stack & Stack.

Case 23-23-800-JK23-ESP-JRA2 Document 05/05/23 Filed 08/05/05/23 Page 23 of 42 Page ID M179

Page 6
Debtor:          Daniel M. Risis
Case No.:        23-11800
Caption of Order: **DECISION AND ORDER RE MOTION BY MR. RISIS**
                 **TO INVESTIGATE CRIMINAL ACTS**

---

(13) L. Lin Wood – No specific allegations are made concerning this person, but Mr. Risis suggests that he has information concerning "who was behind the scenes and orchestrated the capital riots." The Court does not see how this is relevant to this bankruptcy case and suggests that this information should be shared with the appropriate Federal authorities.

(14) Donald Biase – Mr. Biase is the Chapter 7 trustee in this case. He has a fiduciary duty to preserve and liquidate assets of the estate for the benefit of creditors. His administration of the estate is subject to oversight of the Bankruptcy Court and many of his business decisions are subject to Court approval. Mr. Risis has the right to oppose actions of the Chapter 7 trustee where he believes they are not in the best interests of the estate.

(15) Richard Trenk – Mr. Trenk is an attorney with the law firm serving as counsel for the Chapter 7 trustee. His firm's retention was approved by the Court and his firm's fees and expenses are subject to Bankruptcy Court approval. Mr. Trenk's relationships with parties-in-interest in this case have been disclosed and the Court has not seen cause to disqualify Mr. Trenk's firm based on conflict of interest. The decisions and actions of the Chapter 7 trustee's counsel will be addressed on a case-by-case basis. For example, Mr. Risis has filed a motion for sanctions against Mr. Trenk and a motion which criticizes Mr. Trenk's conduct in the eviction of a tenant at the West Orange property. The Court will hear these motions and determine what relief is appropriate.

## NOW THEREFORE, IT IS ORDERED:

1. The Motion is granted in part and denied in part as set forth above.

2. So long as this case remains in Chapter 7, Mr. Risis is directed to cooperate with the Chapter 7 trustee regarding civil claims that he has against third parties.

3. To the extent that Mr. Risis believes that the Court, the Chapter 7 trustee, or the Office of the United States Trustee should refer a criminal matter to the United States attorney, he should provide such parties with all details concerning such alleged crimes, including but not limited to, witnesses, documents, correspondence, a full description of the crime and the federal statute that was violated.